UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER REINOEHL, | ) | |
| JASON REINOEHL, | ) | |
| SARAH REINOEHL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00889-SEB-MG |
| | ) | |
| PENN-HARRIS-MADISON SCHOOL COR- | ) | |
| PORATION, | ) | |
| KATIE JENNER in her official and individual | ) | |
| capacity, | ) | |
| INDIANA STATE BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs Jennifer, Jason, and Sarah Reinoehl (collectively "Plaintiffs"), proceeding *pro se*, brought this § 1983 action against the Penn-Harris-Madison School Corporation ("PHM"), the Indiana State Board of Education (the "Board"), and Indiana Secretary of Education Katie Jenner ("Secretary Jenner") (collectively "Defendants"), alleging that the teaching of evolutionary theory in public schools violates the Establishment Clause of the First Amendment to the United States Constitution as well as Article 1, Section 3 of the Indiana Constitution. Now before the Court are PHM's Motion to Dismiss, dkt. 39, and the Board and Secretary Jenner's Motion to Dismiss, dkt. 41, the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim. For the reasons explicated below, Defendants' motions are **GRANTED**.

1

**BACKGROUND**

PHM is a public-school corporation located in Mishawaka, Indiana, that serves ap-

proximately 11,500 students. Plaintiffs Jennifer and Jason Reinoehl are parents of Jason

Reinoehl II, Samuel Reinoehl, Co-Plaintiff Sarah Reinoehl, L.R., and T.R., each of whom

(except T.R.) "have attended" PHM schools. Am. Compl. ¶ 12, dkt. 31. (Plaintiffs do not

allege that any of their children are presently attending a PHM school.) Sarah Reinoehl

began attending PHM schools in 2015 and completed the eleventh grade in the 2020–21

school year. L.R. began attending PHM schools in 2019 and completed the tenth grade in

the 2020–21 school year. Jennifer and Jason's youngest child, T.R., "is old enough to enter

public school" but is not currently enrolled therein. *Id.* ¶ 13. Jennifer and Jason assert that

they intend to enroll T.R. "as soon as the school stops teaching the religion of atheism as if

it is scientific fact under the guise of 'Evolution.' " *Id.*

According to Plaintiffs, the Board and Secretary Jenner require Indiana public

schools, including PHM, to teach the theory of evolution to all K–12 students. Specifically,

Plaintiffs allege that both Sarah and L.R. were taught evolution in their respective ninth-

grade biology classes, as mandated by state guidelines. Sarah and L.R. encountered addi-

tional instruction about evolution in their elective courses: Sarah in her eleventh-grade As-

tronomy class, and L.R. in her tenth-grade Animal Science class. Unlike the state-directed

biology course, Plaintiffs aver, "the content of the elective courses, including whether or

not they teach about evolution, is left entirely up to the school corporation." *Id.* ¶ 83.

Plaintiffs contend that PHM schools teach "the state-sponsored, atheistic, religious

Theory of Evolution . . . under the guise that [it is] 'science.' " *Id.* ¶ 15. Plaintiffs maintain

that various components of evolutionary theory—namely, the "Big Bang Theory," sponta-neous generation, dating systems, the fossil record, speciation, and spontaneous abortion—are scientifically disproven, rendering evolutionary theory "a non-scientific belief" that is "inherently a religious origin myth, argument, or assertion that falls outside the realm of science." *Id.* ¶ 91.

Plaintiffs further assert that evolution embodies "positions taken by advocates of Atheism." *Id.* ¶ 100. "Because the atheistic Theory of Evolution specifically attacks the Judeo-Christian origin story," Plaintiffs argue, "it has the purpose and effect of advancing the atheist religion . . . , result[ing] in the entanglement of the state with religion . . . ." *Id.* ¶ 101.

On May 23, 2023, Plaintiffs filed this action in our court on the basis of federal question and supplemental jurisdiction, arguing that the inclusion of evolution in public school curriculum violates the Establishment Clause of the United States Constitution as well as Article 1, Section 3 of the Indiana Constitution. Plaintiffs assert that discussions about the origins of the universe "must be limited to classes on religion and philosophy—in which all creation stories from all religions should be presented as equal." *Id.* ¶ 105. Plaintiffs seek damages based on Sarah's and L.R.'s previous exposure to the subject matter of evolution in high school as well as declaratory and injunctive relief prohibiting Defend-ants from teaching evolution and directing them to "remov[e] all literature and media pro-moting or describing the Theory of Evolution from public school science classrooms." *Id.* at 30 (Prayer for Relief).

On September 6, 2023, Defendants moved to dismiss the complaint for lack of sub-ject-matter jurisdiction and failure to state a claim. Dkt. 39, 41. Both motions are fully briefed and ripe for ruling.

## STANDARDS OF REVIEW

### I.   Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a federal court must dismiss an action where it lacks subject matter jurisdiction. Standing is "the threshold question in every federal case" that not only "imports justiciability," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), but that also comprises "an essential component of [Article III's] case-or-contro-versy requirement," *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing *Lujan v. Defs of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

When a party asserts that a plaintiff has not "sufficiently alleged a basis of subject matter jurisdiction," we "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009)). Nonetheless, "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* (alterations omitted) (citing *Lujan*, 504 U.S. at 561).

## II.     Dismissal for Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, courts must construe "all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). However, courts need not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011). The plausibility inquiry is, at bottom, a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (internal quotation and citation omitted).

## DISCUSSION

Plaintiffs seek a declaration from this Court that the teaching of evolution in Indiana public schools violates provisions of the federal and state constitutions; an injunction that prohibits Defendants from teaching evolution in the future and that instructs Defendants to remove from public school science classrooms all literature and media promoting or describing the theory of evolution; and an award of money damages.

Defendants argue several grounds for the dismissal of Plaintiffs' Amended Complaint. First, they contend that Plaintiffs lack standing to pursue declaratory and injunctive relief and that their claims are not ripe (as to Jennifer and Jason) or moot (as to Sarah). Second, Defendants contend that Plaintiffs have failed to allege facts that plausibly give

rise to a violation of either the First Amendment to the United States Constitution or Article I, Section 3 of the Indiana Constitution. We address each argument in turn below.

## I.      Subject Matter Jurisdiction

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Justiciability doctrines effect Article III's Case or Controversy requirement by ensuring "the standing of litigants to assert particular claims" as well as "the appropriate timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991).

This injury-in-fact requirement implicit in standing imposes an obligation on plaintiffs to establish as a part of their claims that they have sustained or are immediately in danger of sustaining some direct injury. *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 527–28 (7th Cir. 2001). Though the contours of a "concrete" injury are "particularly elusive in the Establishment Clause context," it is well-settled that "a plaintiff cannot establish standing based solely on being offended by the government's alleged [constitutional] violation." *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014) (citations omitted). Plaintiffs can, by contrast, establish standing "based on the direct harm of what is claimed to be an establishment of religion" or based on "expos[ure] to religious symbols." *Id.* at 820 (citations omitted).

When seeking prospective equitable remedies, such as declaratory or injunctive relief, "[p]ast exposure to [allegedly] illegal conduct does not itself show a present case or controversy . . . ." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Additionally, plaintiffs'

mere speculation that they "may suffer the same injury at some time in the future is [equally] insufficient to establish standing." *Tobin*, 268 F.3d at 528. Indeed, "the Supreme Court has made clear that . . . to invoke Article III jurisdiction, a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of direct injury." *Sierakowski v. Ryan*, 233 F.3d 440, 443 (7th Cir. 2000). "[M]any of these same precepts" also apply "in terms of ripeness," which "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Sweeney v. Raoul*, 990 F.3d 555, 559–60 (7th Cir. 2021) (internal quotation and citation omitted).

Applying these principles to the claims before us here, we conclude that Jennifer and Jason have successfully established standing sufficient to pursue prospective relief and that their claims are ripe. Sarah, however, lacks standing to seek prospective relief.

Generally, parents have standing to assert claims on their *own* behalf for constitutional violations involving their children at school so long as the alleged violated directly affects the parents. *Ervins v. Sun Prairie Area Sch. Dist.*, 609 F. Supp. 3d 709, 720 (W.D. Wis. 2022). As such, "parents have standing to raise [a] claim alleging a violation of the Establishment Clause [based on] the impermissible establishment of religion [that] might inhibit their right to direct the religious training of their children" because, in those circumstances, the parents themselves "are directly affected by the government action." *Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 683–84 (7th Cir. 1994). Parents cannot, however, "rely solely on interference with the rights of their children." *Ervins*, 609 F. Supp. 3d at 720.

With regard to Jennifer and Jason's claims, we have no difficulty finding that they have sufficiently alleged an injury-in-fact and that their claims are ripe. They allege, in relevant part, that PHM schools teach evolution "at every level from Kindergarten to [twelfth] grade"; that, but for the alleged inclusion of evolution in public schools, they would proceed to enroll T.R., their youngest daughter, in PHM schools; and that "Defendants' evolution teaching guidelines . . . invades [sic] [ ] Plaintiffs' prerogative to instruct their children about their beliefs with respect to religion." Am. Compl. ¶¶ 89–90, 111, dkt. 31. Thus, Jennifer and Jason have adequately alleged that they themselves are experiencing harm by the purported violation of the Establishment Clause. Insofar as Jennifer and Jason seek to vindicate the rights of their children, however, they lack standing to do so.

Defendants argue that Jennifer and Jason's claims are not ripe because their youngest child, T.R., is still of elementary age and thus too young for the ninth-grade biology course that allegedly includes instruction about evolutionary theory. Plaintiffs respond that, because evolution is taught at every grade level, not just in high school, T.R.'s enrollment in a public elementary school would expose her to curricula that Jennifer and Jason find objectionable. Taking Plaintiffs' factual allegations as true, as we must at this pleading stage, we conclude that Plaintiffs' claims are also ripe for adjudication.

Sarah, by contrast, does not have standing to pursue any claim for prospective relief, as she faces no imminent future harm.[1] She avers that she was taught the theory of

---

[1] Our conclusion that Sarah lacks standing to seek prospective relief does not affect her standing to pursue money damages as retrospective relief. *See Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010).

evolution, as mandated by Indiana's educational guidelines, in her ninth-grade biology class at Penn High School in the 2018–19 school year. She also alleges having learned the theory of evolution in her eleventh-grade elective course about astronomy in the 2020–21 school year. Plaintiffs do not allege that Sarah intends to retake either course or even that she still attends Penn High School. Accordingly, Plaintiffs have failed to plead that Sarah faces any immediate or impending risk of harm sufficient to confer standing for prospective relief.[2]

## II.   Failure to State a Claim

Having addressed Plaintiffs' individual standing to pursue prospective relief, we turn to whether Plaintiffs have alleged sufficient facts upon which to state a claim for relief that can be granted.

### A.   Establishment Clause

The First Amendment to the United States Constitution provides, in pertinent part, that government "shall make no law respecting an establishment of religion." U.S. Const. amend. I, cl. 1. The Establishment Clause "must be interpreted by reference to historical practices and understandings." *Kennedy v. Bremerton*, 597 U.S. 507, 535 (2022). Ultimately, whether a law offends the Establishment Clause turns on "the understanding of the Founding Fathers" such that the line between permissible and impermissible "accords with

---

[2] Mootness principles would counsel the same result, as prospective relief would not redress Sarah's alleged injuries. *See Ruggles v. Ruggles*, 49 F.4th 1097, 1099 (7th Cir. 2022) (quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019)) (explaining that the doctrine of mootness deprives federal courts of jurisdiction when "it becomes impossible for [the] federal court to provide any effectual relief to the plaintiff") (internal quotation and citation omitted).

history." *Town of Greece v. Galloway*, 572 U.S. 565, 577 (2014) (plurality opinion) (quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 294 (1963) (Brennan, J., concurring)).

Before evaluating the legal sufficiency of Plaintiffs' allegations, "we must first determine whether there is even an issue of establishment of religion." *Fleischfresser*, 15 F.3d at 687. Plaintiffs plausibly "raise a constitutional claim only if [teaching evolution] establishes a *religion*." *Id.* (emphasis in original). If the challenged practice is not religious in nature, there can be no Establishment Clause violation. *Ervins*, 609 F. Supp. 3d at 725.

We find that Plaintiffs have failed to allege an Establishment Clause violation here because "it is clearly established in the case law, and perhaps also in common sense, that evolution is not a religion and that teaching evolution does not violate the Establishment Clause." *McLean v. Arkansas Bd. of Ed.*, 529 F. Supp. 1255, 1274 (E.D. Ark. 1982); *see, e.g.*, *Edwards v. Aguillard*, 482 U.S. 578, (1987) (state law prohibiting teaching evolution unless also taught with creation science violates First Amendment); *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968) (banning the teaching of evolution in public schools violates the First Amendment); *Wright v. Houston Indep. Sch. Dist.*, 366 F. Supp. 1208, 1210–11 (S.D. Tex. 1972) (educational material covering the subject of evolution "is peripheral to the matter of religion" and therefore does not offend the First Amendment), *aff'd*, 486 F.2d 137 (5th Cir. 1973); *Peloza v. Capistrano Unified Sch. Dist.*, 782 F. Supp. 1412, 1417–18 (C.D. Cal. 1992) (rejecting argument that evolution is a religion), *judgment aff'd in part, rev'd in part on other grounds*, 37 F.3d 517, 520–21 (9th Cir. 1994) (affirming district court's holding that evolution is not a religion); 68 Am. Jur. 2d Schools § 415 (2024) ("The mandated

teaching of evolution as a major theme of science is not a violation of the Establishment Clause since evolution is not a religion."). [3]

Nonetheless, according to Plaintiffs, "[e]volution promotes positions taken by advocates of Atheism," embodies "all the tenets of atheistic religious belief[,] and fail[s] to follow scientific laws . . . ." Am. Compl. ¶¶ 100–01, dkt. 31. Plaintiffs thus "perceive" that the teaching of evolution in public schools "convey[s] a governmental message that students should subscribe to Atheism." *Id.* ¶ 111. Despite Plaintiffs' assertions to the contrary, the purported similarities between evolution and atheism do not render the teaching of evolution in public schools violative of the Establishment Clause, which has never been understood to prohibit government conduct that incidentally "coincide[s] or harmonize[s] with the tenets of some or all religions." *McGowan v. Maryland*, 366 U.S. 420, 442 (1961); *see also Wright*, 486 F.2d at 138 ("Contrary to the sincere, able, and rigorous arguments of plaintiffs, the Federal courts cannot by judicial decree do that which the Supreme Court has declared the state legislatures powerless to do, *i.e.*, prevent teaching the theory of evolution in public schools for religious reasons.") (citing *Epperson*, 393 U.S. at 97).

Because Plaintiffs are unable to plausibly allege that teaching evolution in public schools establishes a religion, their Establishment Clause claim necessarily fails as a matter of law and must be dismissed.

---

[3] Plaintiffs appear to have pled their Establishment Clause claim under the since-abrogated standard set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). *See Kennedy*, 597 U.S. at 534. Because the challenged governmental conduct is not religious in nature, we need not evaluate the merits of Plaintiffs' contentions under either standard.

### B.     Article 1, Section 3 of the Indiana Constitution

Plaintiffs assert that the teaching of evolution in public schools violates Article I, Section 3 of the Indiana Constitution, which provides that "[n]o law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience." Ind. Const. art. 1, § 3 (1851). Plaintiffs apparently seek to invoke § 1983 as a statutory basis on which to vindicate their state constitutional rights, Am. Compl. 29–30 (Prayer for Relief), dkt. 31; however, § 1983 protects individuals from violations of *federal*—not state—law. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Because Plaintiffs do not have § 1983 available as grounds to assert their Article I, Section 3 claim, they have failed to state a claim upon which relief can be granted. *See Montanez v. Town of Highland*, No. 2:19-cv-208-TLS, 2020 WL 6728961, at *8 (N.D. Ind. Nov. 13, 2020).

Thus, we conclude that Plaintiffs have failed to state a viable § 1983 claim based on the alleged violation of Article I, Section 3 of the Indiana Constitution. Insofar as Plaintiffs assert their Indiana constitutional claim independent of § 1983, we—consistent with Seventh Circuit precedent—decline to exercise supplemental jurisdiction over it. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (reiterating "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). Accordingly, Plaintiffs'

claim based on Article I, Section 3 of the Indiana Constitution must be dismissed without prejudice to its refiling in state court.[4]

### CONCLUSION

For the reasons explicated above, PHM's and the Board and Secretary Jenner's Motions to Dismiss, dkt. 39, 41, are **GRANTED** as follows: Sarah Reinoehl's claims for prospective relief are **DISMISSED without prejudice** for lack of jurisdiction; Plaintiffs' § 1983 claims based on the Establishment Clause of the United States Constitution and Article I, Section 3 of the Indiana Constitution are **DISMISSED with prejudice** for failure to state a claim, *see Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 1015) (Rule 12(b)(6) dismissal "is a dismissal with prejudice"); and Plaintiffs' Article I, Section 3 claim is **DISMISSED without prejudice**, *see* 28 U.S.C. § 1367(c)(3).

"Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (internal quotation omitted). Although instances "of clear futility at the outset of a case are rare," *id.* at 520, we conclude that any such amendment here would be futile.

---

[4] Having concluded that Plaintiffs failed to state an Establishment Clause claim and having declined to exercise supplemental jurisdiction over their state-law claim, we need not address Defendants' remaining arguments, including (but not limited to), that Plaintiffs' grievances are based on the actions of Indiana state entities, not of PHM; that Plaintiffs' claims are barred by the applicable statute of limitations; and that Plaintiffs' claims against Secretary Jenner are precluded by qualified immunity.

Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date:

8/30/2024

_SARAH EVANS BARKER, JUDGE_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JENNIFER REINOEHL
51860 Cheryl Dr.
Granger, IN 46530

JASON REINOEHL
51860 Cheryl Dr.
Granger, IN 46530

SARAH REINOEHL
51860 Cheryl Dr.
Granger, IN 46530

J. Derek Atwood
INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov

Amy Steketee Fox
CHURCH CHURCH HITTLE & ANTRIM
afox@cchalaw.com

Hannah Gahimer
Church Church Hittle & Antrim
hgahimer@cchalaw.com

Meredith McCutcheon
INDIANA ATTORNEY GENERAL
meredith.mccutcheon@atg.in.gov